```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
AMANDA WILLIAMS,                                  :
                                                  :       MEMORANDUM AND ORDER
                        Plaintiff,                :
                                                  :       08-CV-4612 (DLI)(VVP)
        -against-                                 :
                                                  :
BRIAN FISCHER, LUCIEN LECLAIRE, JR.,              :
GLENN S. GOORD, ANTHONY J. ANNUCCI,               :
and JOHN/JANE DOES 1-25,                          :
                                                  :
                        Defendants.               :
-------------------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Amanda Williams brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), claiming that Defendants violated her constitutional rights under the Fourth and Fourteenth Amendments. (*See generally* Docket Entry No. 1 ("Compl.").) Defendants move to dismiss the action for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Rule 12(b)(6). (*See generally* Docket Entry No. 9 ("Mot. to Dismiss").) For the reasons set forth below, the motion to dismiss is granted in its entirety as to Defendants LeClaire and Goord, and also granted as to the claims against the remaining defendants in their official capacities. As to the claims against Fischer, Annucci, and the unnamed defendants, in their respective individual capacities, the motion to dismiss is denied.

**I.    BACKGROUND**

On October 21, 2002, Plaintiff pled guilty to one count of attempted assault in the first degree in New York Supreme Court, Kings County. (Compl. ¶ 8.) Pursuant to this plea, Plaintiff was sentenced to a determinate prison term of three years on April 30, 2003, and turned over to the custody of the New York State Department of Correctional Services ("DOCS"). (*Id.* ¶ 9.) Prior

to her release from prison on November 14, 2005, Plaintiff was also given a five-year term of post-release supervision ("PRS"). (*Id.* ¶ 13.) This sentence was administratively imposed by DOCS pursuant to N.Y. Penal Law § 70.45, as it existed at that time.[1] (*Id.*; *see also* Mot. to Dismiss 2.)

On June 9, 2006, the United States Court of Appeals for the Second Circuit held in *Earley v. Murray* that it is unconstitutional for DOCS to administratively impose PRS. *See* 451 F.3d 71, 75 (2d Cir. 2006) ("Only the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty."). On April 29, 2008, the New York State Court of Appeals likewise struck down administratively imposed PRS as a matter of state law in two cases. *See People v. Sparber*, 10 N.Y.3d 457, 470 (2008) ("sentencing is a uniquely judicial responsibility"); *Garner v. N.Y. State Dep't of Corr. Servs.*, 10 N.Y.3d 358, 362 (2008) ("DOCS's imposition of the PRS term contravenes the CPL's express mandate that sentencing is a judicial function"). The New York State Court of Appeals noted that an improperly imposed term of PRS could be remedied through resentencing by the original sentencing court. *See Garner*, 10 N.Y.3d at 363 n.4. The state legislature codified this remedy with the passage of Correction Law § 601-d and Penal Law § 70.85, effective June 30, 2008. *See Ruffins v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 398-402 (E.D.N.Y. 2010) (providing procedural history); *Nazario v. State*, 24 Misc. 3d 443, 447-48 (N.Y. Ct. Cl. 2009) (same). Notably, New York Correction Law §§ 601-d(1)-(2) also mandates that DOCS notify persons in Plaintiff's situation, as well as the original sentencing court, "[w]henever it shall appear to the satisfaction of [DOCS]" that such persons improperly received a term of administratively imposed PRS.

---

[1] This law stated, in relevant part, that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision." N.Y. PENAL LAW § 70.45. Nothing in that statute specifically provided that PRS could be imposed by anyone other than the sentencing judge, however.

On or about August 5, 2008, an arrest warrant for Plaintiff was issued in New York, stemming from a violation of her PRS, which, as originally imposed by DOCS, was still in effect.[2] (Compl. ¶ 15.) On or about August 28, 2008, Plaintiff was returned to the custody of DOCS in New York pursuant to this warrant. (*Id.* ¶ 16.) On October 23, 2008, a Kings County Supreme Court judge,[3] pursuant to New York Correction Law § 601-d and New York Penal Law § 70.85, declined to retroactively impose a term of PRS, and Plaintiff was released on October 30, 2008. (*Id.* ¶¶ 17–18.)

On November 13, 2008, Plaintiff brought the instant § 1983 action, claiming, *inter alia*, that Defendants "willfully and intentionally imposed upon [her] a term of PRS which they knew they had no authority to impose [that resulted in her being] wrongly and falsely imprisoned in the State of New York for 63 days." (Compl. ¶¶ 19, 23.)

Defendants move to dismiss the action on a number of grounds. First, they argue that Plaintiff has failed to sufficiently allege their personal involvement in her alleged constitutional deprivation. (Mot. to Dismiss. 3–8.) Next, Defendants contend that Plaintiff's "allegedly wrongful confinement was . . . privileged." (*Id.* at 8–11.) Defendants also argue that they are entitled to absolute immunity under the Eleventh Amendment, as "New York State is the real substantial party in interest." (*Id.* at 11.) Defendants further claim that they are shielded by qualified immunity as, "[a]t the time of the alleged imposition of PRS on Plaintiff, it was not clearly established [that doing so was unconstitutional]." (*Id.* at 13.) Finally, Defendants maintain that the

---

[2] The record does not indicate how Plaintiff was alleged to have violated PRS, other than noting that she was arrested in Indiana in February 2008. (*See* Compl. ¶ 14.) As discussed *supra*, both the New York State Court of Appeals and the New York State legislature had determined that such a PRS sentence, imposed administratively by DOCS, was unconstitutional.

[3] The record does not indicate if this was the same judge who imposed Plaintiff's original 2003 sentence.

instant action is barred by the statute of limitations. (*Id.* at 25.)

## II. DISCUSSION

### A. Personal Involvement of Defendants

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of N.Y.*, 579 F.3d 176, 184 (2d Cir. 2009). "[M]erely [holding] a high position of authority" is insufficient. *Willey v. Kirkpatrick*, 2009 WL 3300263, at *3 (W.D.N.Y. Oct. 13, 2008) (citations and internal quotation marks omitted). The Second Circuit has held that personal involvement may be established by a showing that "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom . . . ." *Scott v. Fischer*, 2010 WL 2991085, at *8 (2d Cir. Aug. 2, 2010) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

As an initial matter, only conduct that occurred after New York codified the *Sparber/Garner* holdings on June 30, 2008 is actionable at bar as, prior to that date, it was not clearly established that DOCS' administrative imposition of PRS was unconstitutional. (*See* Part II.D, *infra*.) Defendant Lucien J. LaClaire, Jr. was Acting Commissioner of DOCS from August 30 to December 31, 2006 (Compl. ¶ 3), and Defendant Glenn S. Goord was the Commissioner of DOCS from 1996 until August 2006. (*Id.* ¶ 4.) Thus, neither was capable of personal involvement in the alleged constitutional deprivation during the actionable period. Accordingly, Defendants' Rule 12(b)(6) motion is granted in its entirety with respect to LaClaire and Goord.

In contrast, Defendants Brian Fischer and Anthony J. Annucci were the Commissioner and a Deputy Commissioner, respectively, of DOCS at all relevant times subsequent to June 30, 2008. (*See* Compl. ¶¶ 2, 5.) Plaintiff claims that both were, at all relevant times, "responsible for

4

the oversight of DOCS, including . . . developing and enforcing the policies and practices implemented . . . at DOCS." (Compl. ¶¶ 2, 5.) Plaintiff also alleges that both were "policy-maker[s] with respect to DOCS' policies and decisions to administratively impose terms of . . . PRS," and for "ensuring that DOCS policies and actions . . . are not in violation of the Constitutions of the United States or the State of New York." (*Id.*) With respect to the unnamed defendants, Plaintiff similarly alleges that during the relevant period, they were "supervisory and/or policy making officers . . . of DOCS, responsible for the implementation and enforcement of DOCS' policies and decisions concerning the imposition of PRS." (*Id.* ¶ 6.) Furthermore, Plaintiff alleges that, "as a result of the issuance of the [arrest] warrant by the State of New York, [her] sentence for her arrest in Indiana was greater that what it would otherwise have been, causing her to suffer an additional period of imprisonment . . . ." (*Id.* ¶ 20.)

Read together, construed liberally, accepted as true, and with all reasonable inferences drawn in Plaintiff's favor, *see Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (citations and internal quotation marks omitted), these allegations make it plausible that Fischer, Annucci, and the unnamed defendants allowed the continuance of a policy "under which unconstitutional practices occurred." *Colon*, 58 F.3d at 873. It is undisputed that Plaintiff was imprisoned for violation of a PRS sentence that had previously been declared unconstitutional. While these defendants may not have "created [the] policy . . . [at DOCS] under which [the] unconstitutional practices occurred," *id.*, there is also no indication that, prior to Plaintiff's New York imprisonment, they made any attempt to facilitate correction of her unconstitutional sentence by notifying her or the sentencing court as required under New York law. *See* N.Y. CORRECT. LAW § 601-d(2); *see also Scott*, 2010 WL 2991085, at *8 (describing such a duty). It is worth noting that these defendants, by virtue of their supervisory and policy making positions at DOCS, may have been

5

the only persons capable of either giving Plaintiff such notice or directing that such notice be given. By allegedly failing to do so, these defendants not only violated their statutory duty to help redress the original unconstitutionality, but allowed the unconstitutionality to be compounded. In sum, with respect to Fischer, Annucci, and any unnamed DOCS supervisory personnel who held their positions subsequent to June 30, 2008, the court finds that Plaintiff has alleged sufficient personal involvement to survive the motion to dismiss. *See Shomo*, 579 F.3d at 184.

### B. "Otherwise Privileged"

"Under New York law, the elements of a false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Co. Sheriff's Dep't*, 63 F.3d 110, 118 (2d Cir. 1995) (citations and internal quotation marks omitted). Defendants argue that, because Plaintiff's imprisonment was "otherwise privileged," her action must be dismissed, citing a number of state cases "reject[ing] false imprisonment claims based on the administrative imposition of PRS." (Reply 4.) As an initial matter, none of the disputed conduct in the cases cited by Defendants occurred after June 30, 2008. *See Collins v. State*, 69 A.D.3d 46 (4th Dep't 2009); *Nazario v. New York*, 24 Misc. 3d 443 (Ct. of Claims 2009); *Frederick v. New York*, 23 Misc. 3d 1008 (Ct. of Claims 2009). Furthermore, these cases are all distinguishable from the case at bar in that they involved state law false imprisonment claims, as opposed to federal § 1983 claims. Accordingly, the cases cited by Defendants are all inapposite.

With respect to Defendants' argument that they "are not responsible for the supervision of parolees released to PRS," (Mot. to Dismiss 9), and "had no obligation to investigate the validity of

6

Plaintiff's PRS before her arrest . . . ." (Reply 5), these arguments are more applicable to the discussion of personal involvement and qualified immunity. Accordingly, they are addressed in Parts II.A and D, respectively, and dismissal on the "otherwise privileged" ground is unwarranted.

### C. Absolute Immunity

It is well settled that the Eleventh Amendment's grant of absolute immunity to the states extends to claims for damages against state officials sued in their official capacity, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), and Plaintiff seeks only damages and not injunctive relief. (*See* Compl. 7.) Accordingly, as the instant claims against Defendants in their official capacities are barred by the Eleventh Amendment, Defendants' motion to dismiss these claims is granted. *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) (upholding Rule 12(b)(1) dismissal of claims against state officials due to Eleventh Amendment). Dismissal of the claims against Defendants in their individual capacities, however, is not warranted by the Eleventh Amendment, and the motion to dismiss these claims is denied. *See Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252 (2d Cir. 1991) ("[I]t would have been more appropriate for the court simply to specify that the dismissal extended to all claims against . . . the individual[] [defendants] in their official capacities, permitting [plaintiff] to pursue the claims that were not barred by the Eleventh Amendment.").

### D. Qualified Immunity

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages, but also "immunity from suit"). "[T]he salient question [in determining qualified

7

immunity] is whether the state of the law . . . gave [defendants] fair warning that their alleged treatment of [plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden of pleading falls on the asserting defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) ("defendants bear the burden of showing that the challenged act was objectively reasonable"). The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 F. App'x 114, 116 (2d Cir. 2010). The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S. Ct. 808, 815–16 (2009) (citations omitted). The second is a determination of "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.* at 816 (citation and internal quotation marks omitted). Here, Defendants do not contest the first step of the analysis. (*See generally* Mot. to Dismiss 12–24.) Therefore, the only remaining question with respect to qualified immunity is whether the right at issue was clearly established during the relevant times. *See Pearson*, 129 S. Ct. at 815–16; *see also Varrone*, 123 F.3d at 78 (placing burden on defendants asserting qualified immunity).

A right is "clearly established" if "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "To determine whether a right is clearly established, we look to: (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott*, 2010 WL 2991085, at *4 (citing *Schecter v. Comptroller of City of N.Y.*, 79 F.3d

265, 271 (2d Cir. 1996)); *see also* MARTIN A. SCHWARTZ & KATHRYN R. URBONYA, SECTION 1983 LITIGATION 146 (2d ed. 2008) ("Normally, a controlling precedent of the Supreme Court, the particular circuit, or the highest court in the state is necessary to clearly establish federal law."). Furthermore, "[a] plaintiff . . . may overcome the defendant official's qualified immunity only by showing that [the] rights [in question] were clearly established *at the time of the conduct at issue*." *Ruffins*, 701 F. Supp. 2d at 398 (citations and internal quotation marks omitted).

As an initial matter, Defendants' position is that the "conduct at issue" consisted solely of DOCS' original imposition of PRS upon Plaintiff, which occurred sometime between her incarceration in April 2003 and the beginning of her PRS in November 2005. However, as discussed in Part II.A, *supra*, a liberal reading of Plaintiff's allegations compels a more expansive definition of the "conduct at issue." In addition to alleging a constitutional violation with respect to the *imposition* of her PRS during the period of her incarceration, Plaintiff also alleges that, "as a result of the issuance of the [arrest] warrant by the State of New York, [her] sentence for her arrest in Indiana was greater than what it would otherwise have been, causing her to suffer an additional period of imprisonment . . . ." (Compl. ¶ 20.) In other words, Plaintiff also seeks relief for the unconstitutional *enforcement* of her PRS, encompassing both the issuance of the New York arrest warrant and Plaintiff's subsequent extradition and imprisonment. It is this enforcement that is the "conduct at issue" for purposes of the qualified immunity analysis.

The Second Circuit recently stated that "it was *not* clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause." *Scott*, 2010 WL 2991085, at *6 (emphasis added). Accordingly, Defendants are unequivocally entitled to qualified immunity for any action that occurred before June 9, 2006. The *Scott* Court declined to decide "precisely *when* it became clearly established that the

9

administrative imposition of PRS . . . is unconstitutional." *Id.* (emphasis added). However, addressing the roughly two-year period between *Earley* and the New York State Court of Appeals' *Sparber/Garner* decisions, the *Scott* Court stated that, "[i]n circumstances of such apparent judicial confusion as to the constitutional propriety of a statutory mandate, qualified immunity might well continue to shield state officials acting pursuant to that statute." *Scott*, 2010 WL 2991085, at *6. In light of the "judicial confusion" to which the Second Circuit alluded in *Scott*, this court holds that during the period between *Earley* and the *Sparber/Garner* decisions, it was *not* clearly established that administrative imposition of PRS is unconstitutional. *See* 2010 WL 2991085, at *6 (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Vives v. City of N.Y.*, 405 F.3d 115, 118 (2d Cir. 2005)). Accordingly, Defendants are also entitled to qualified immunity for any action that occurred before April 29, 2008. *See Ruffins*, 701 F. Supp. 2d at 408.

The *Sparber/Garner* holdings issued on that date, however, eliminated the "judicial confusion" between the various New York Appellate Courts and the Second Circuit with respect to the constitutionality of administratively imposed PRS. *Compare* 10 N.Y.3d at 470 *and* 10 N.Y.3d at 362 *with Earley*, 451 F.3d at 75. Furthermore, any remaining confusion was removed on June 30, 2008, when New York codified the resentencing procedure for persons in Plaintiff's situation. *See* N.Y. CORRECT. LAW § 601-d; N.Y. PENAL LAW § 70.85; *see also Scott*, 2010 WL 2991085, at *8 (indicating that passage of these laws "impos[ed] an affirmative duty on the part of [government] officials to [resentence or otherwise handle the cases of those who had received administrative imposition of PRS]"). Thus, as discussed *supra*, the relevant conduct at issue occurred over one month *after* the resentencing statutes took effect. Defendants accordingly had "fair warning," from the "state of the law" at the time, that this conduct might be unconstitutional. *See Hope*, 536 U.S. at 741. Furthermore, Defendants are hard-pressed to deny that they had "fair

warning' in light of the numerous petitions for habeas corpus brought by persons on PRS following *Sparber/Garner*, which prompted the state governor and legislature to craft the aforementioned resentencing remedy. *See* MARK BONACQUIST, PRACTICE COMMENTARY for N.Y. CORRECT. LAW § 601-d (McKinney 2010). Therefore, the court holds that *subsequent* to June 30, 2008, the right in question was clearly established for qualified immunity purposes.[4]

Defendants argue that their alleged actions during this period are nevertheless entitled to qualified immunity, because "after [Plaintiff] was returned to DOCS custody, [she] was subsequently returned to her sentencing court as required by § 601-d." (Mot. to Dismiss 24.) While Plaintiff eventually was resentenced pursuant to this statute, Defendants do not explain why Plaintiff was imprisoned for sixty-three days in the interim, as § 601-d gives DOCS no such authority. Furthermore, as discussed in Part II.A, *supra*, there is no indication that Defendants made any attempt, prior to August 5, 2008, to comply with § 601-d(2)'s directive to notify Plaintiff of her required resentencing. Had they so notified her, Plaintiff's extradition and imprisonment might not have been necessary. In sum, because the right in question was clearly established during at least a portion of the alleged conduct at issue, qualified immunity does not shield Defendants with respect to this conduct.

---

[4] While a number of recent decisions have considered the issue of qualified immunity in this context, none are squarely on point. Defendants cite to *Rivers v. Fischer*, 2010 WL 3199675 (2d Cir. Aug. 13, 2010) for the proposition that all of their post-*Earley* actions are entitled to qualified immunity. (*See* Docket Entry No. 15, at 2.) However, Rivers was arrested for violation of his unconstitutionally imposed PRS before June 30, 2008, when the right in question was not yet clearly established. *Sinclair v. Goord*, No. 07-CV-1317 (N.D.N.Y. Mar. 10, 2009) is also clearly inapplicable, as that plaintiff was also arrested prior to *Sparber/Garner*, as was the plaintiff in *Hardy v. City of N.Y.*, 2010 WL 3199676 (E.D.N.Y. Aug. 12, 2010). In *Ruffins*, the court deferred ruling on a dismissal motion to allow for additional briefing on the question of qualified immunity after *Sparber/Garner*. However, the record in that case was unclear as to whether the plaintiff's arrest for PRS violation occurred before or after *Sparber/Garner*. *See Ruffins*, 701 F. Supp. 2d at 409. As no such ambiguity exists here, additional briefing is unnecessary.

### E. Statute of Limitation

There is no federal statute of limitation for § 1983 claims, and courts must therefore apply the state limitations period. *See* 42 U.S.C. § 1988(a); *see also* SCHWARTZ & URBONYA 167. In New York, the statute of limitations for § 1983 actions is generally three years. *Lynch v. Suffolk County Police Dep't Inc.*, 2009 WL 3287565, at *2 (2d Cir. Oct. 14, 2009). However, in determining the date of accrual, federal law applies. *See Rene v. Jablonski*, 2009 WL 2524865, at *5 (E.D.N.Y. Aug. 17, 2009) (citing *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003)). "Section 1983 claims generally accrue when the plaintiff knows or has reason to know of the injury, which is the basis of her claim." SCHWARTZ & URBONYA at 168-69 (citations omitted); *see also Rene*, 2009 WL 2524865, at *5.

Defendants argue that Plaintiff's claim accrued "at Plaintiff's [original] sentencing when the sentencing court neglected to orally impose the terms of PRS." (Mot. to Dismiss 25.) Defendants argue in the alternative that the court "could find that the harm arose when DOCS actually performed Plaintiff's sentence calculation . . . soon after she was received into DOCS custody in 2003 . . . ." (*Id.*) These arguments are equally unavailing, as Plaintiff had no reason to know that her administratively imposed PRS might constitute an "injury" until June 9, 2006 at the very earliest, when the practice was declared unconstitutional by the Second Circuit. *See Earley*, 451 F.3d at 75; *see also Scott v. Fischer*, 2009 WL 928195, at *4 (S.D.N.Y. Mar. 30, 2009) (finding defendants' argument that the accrual date should be the date plaintiff learned of her mandatory PRS sentence to be "strained"). Given the state of confusion reflected in state court decisions post-*Earley* and prior to the *Sparber/Garner* decisions, discussed *supra*, the earliest Plaintiff reasonably could have known that her administratively imposed PRS might constitute an injury was with the legislative codification of *Sparber/Garner* on June 30, 2008. Indeed, finding that

the alleged injury accrued earlier would impose on Plaintiff the burden of realizing the instant unconstitutionality prior to Defendants. In sum, because she filed the instant § 1983 action on November 13, 2008, less than six months later, it is not time barred. *See Lynch*, 2009 WL 3287965, at *2.

## III. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in its entirety as to Defendants LeClaire and Goord, and as to the claims against the remaining defendants in their official capacities. As to the claims against Fischer, Annucci, and the unnamed defendants, in their respective individual capacities, the motion to dismiss is denied and the parties may proceed forth with discovery under the supervision of the Honorable Viktor V. Pohorelsky, United States Magistrate Judge.

However, given that a similar case is currently on interlocutory appeal before the Second Circuit (*see generally Santiago v. Fischer*, No. 09-cv-1383, 2009 WL 3852001 (E.D.N.Y. Nov. 18, 2009), and given that qualified immunity is not merely immunity from damages, but also "immunity from suit," *Mitchell*, 472 U.S. at 526, a certificate of appealability on the question of qualified immunity is granted.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2010

_____/s/_____
DORA L. IRIZARRY
United States District Judge